Schuyler G. Carroll
PERKINS COIE LLP
30 Rockefeller Plaza, 22nd Floor
New York, NY 10112
Telephone: (212) 262-6900
Facsimile: (212) 977-1649
scarroll@perkinscoie.com

Attorneys for Berdj Stepanian

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE: | CHAPTER 11 |
| 1201 PLEASANTVILLE ROAD RESTAURANT HOLDING GROUP, LLC, | CASE NO. 17-22743 (RDD) |
| DEBTOR. | |

# EMERGENCY MOTION FOR APPOINTMENT OF CHAPTER 11 TRUSTEE

TO THE HONORABLE ROBERT D. DRAIN,
UNITED STATES BANKRUPTCY JUDGE:

Berdj Stepanian ("Stepanian"), by his attorneys, Perkins Coie LLP, hereby moves for appointment of a Chapter 11 Trustee pursuant to Section 1104 of the Bankruptcy Code and in support thereof respectfully states as follows:

## PRELIMINARY STATEMENT

1. 1201 Pleasantville Road Restaurant Holding Group, LLC (the "Debtor") has failed to open debtor in possession bank accounts and does not have workers compensation insurance. Instead, the Debtor has chosen to utilize the personal bank account of Joseph Pandolfo and his daughter for the Debtor's operations.

2. The Debtor has not paid any post-petition taxes and has not reserved any funds to pay such taxes, despite that the Debtor is operating at a loss post-petition.

3. The Debtor's blatant disregard for the basic requirements of chapter 11 -- which continues the Debtor's pattern of pre-petition misconduct (as briefly described below) -- constitutes cause for the immediate appointment of a trustee. The relief requested is urgent in order to avoid further diversion of income to personal accounts, further losses, unpaid taxes and potential injury or claims to employees while the Debtor lacks insurance coverage.

## BACKGROUND

4. The Debtor commenced this case by the filing of a voluntary petition under chapter 11 of the Bankruptcy Code on May 18, 2017 (the "Petition Date").

5. The Debtor operates a restaurant known as Chatterbox 54, at 1201 Pleasantville Road, Briarcliff Manor, NY. Upon the Debtor's formation, Stepanian was a fifty percent (50%) equity holder having funded the entire build out of the Debtor's restaurant. Julia Pandolfo was the other equity holder and is now the sole equity holder. Although Mrs. Pandolfo did not contribute any funds, her husband was to manage the restaurant without compensation, in exchange for Mrs. Pandolfo's equity interest.

6. As the Pandolfos testified at the Section 341 meeting on June 28, 2017, Stepanian never had any active role in management. Instead, the Pandolfos managed all operations.

7. Just three months after the opening of the restaurant, in March of 2016, substantial problems came to light as a result of the Pandolfos' improper activity. The Pandolfos failed to deposit any cash into the Debtor's bank account, paid employees off the books and failed to withhold the proper taxes. The Pandolfos threatened and then fired employees which resulted in workers compensation complaints and fines. Soon after, Stepanian learned that the Pandolfos failed to pay or reserve for sales taxes.

136096504.2

8. Based on Stepanian's review of the pre-petition operations, over $400,000.00 in cash is unaccounted for. In addition, Julia Pandolfo transferred $204,138.40 from the Debtor to her personal account. Attached hereto as exhibit A is a report from the Debtor's Wells Fargo bank statement showing each of the transfers to Mrs. Pandolfo's personal account.[1]

9. Substantial pre-petition litigation ensued, which resulted in (a) an agreement to release Stepanian's equity interests (which Stepanian sought in order to avoid further liability for the misdeeds of the Pandolfos and (b) two judgments in favor of Stepanian, obligating both the Debtor and Julia Pandolfo to pay $260,000 to Stepanian and $50,000 (later increased to $70,000) for back taxes. The Debtor commenced this chapter 11 case shortly after Stepanian began enforcement action.

10. In the short time since the commencement of this case, the Pandolfos have made clear that they lack the ability to satisfy even the most basic requirements of a debtor seeking to operate under Chapter 11.

11. The Section 341 meeting was conducted on June 28, 2017. At that time, Julia Pandolfo and her husband, Joseph, both testified. As explained at that meeting, nearly all of the items discussed were previously discussed with the Office of the United States Trustee during the Initial Debtor Interview (the "IDI") which took place shortly after the Petition Date.

12. The US Trustee's Operating Guidelines and Reporting Requirements for Debtors in Possession and Trustees (the "Guidelines") specifically require that the Debtor open new debtor in possession bank accounts, solely for the debtor -- separate and apart from any personal or affiliated accounts. The Guidelines also require all debtors to maintain insurance, including for Workers Compensation.

---

[1] In order not to burden the Court and in an effort to focus on the immediate and urgent need for appointment of a trustee to avoid further diversion of assets, the above is only a brief account of some of the Debtor's pre-petition mis-deeds. A full description would require a substantially greater submission.

136096504.2

13. Despite the requirements of the Guidelines and that these issues were raised during the IDI, the Debtor still has failed to open debtor in possession bank accounts and does not have workers compensation insurance. Instead the Pandolfos testified that the Debtor is using a personal bank account in the name of Joseph Pandolfo and their daughter for all of the Debtor's operations.

14. The Pandolfos also testified that the Debtor has operated at a loss since the Petition Date, has not paid any post-petition taxes and has not reserved any funds to pay such taxes.

## JURISDICTION AND VENUE

15. The statutory predicates for this Motion are Section 1104 of the Bankruptcy Code and Bankruptcy Rules 2012 and 9014.

16. Venue of this Motion is proper pursuant to 28 U.S.C. § 1334.

17. This Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) (matters concerning administration of the estate).

## RELIEF REQUESTED

18. Stepanian respectfully requests the immediate appointment of a Chapter 11 Trustee pursuant to Section 1104 of the Bankruptcy Code, as such appointment is in the best interests of the Debtor's estate and all stakeholders and more importantly, appointment of a trustee is necessary to avoid the immediate dissipation of the Debtor's assets, incurrence of substantial unpaid post-petition taxes and potential uninsured liability.

## LEGAL ARGUMENT

**A.    The Standard to Appoint a Trustee**

19. Generally, a debtor in a Chapter 11 case remains in possession of its assets and continues to manage its affairs as a fiduciary for its creditors. 11 U.S.C. §§ 1107, 1108; *see*

*Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 355 (1985). But this general rule subjects debtor's management to removal if it does not act as a fiduciary for creditors and act in a manner that protects and conserves property of the estate "for the benefit of creditors." *In re Sharon Steel Corp.*, 86 B.R. 455, 457 (Bankr. W.D. Pa. 1988); *see In re Marvel Entm't Grp., Inc.*, 140 F.3d 463, 471 (3d Cir. 1998).

20. When the system breaks down (as it has here) and the debtor fails to fulfill its fiduciary responsibilities, there is a safety valve. That safety valve is a Chapter 11 Trustee. Here, it is necessary to appoint a Chapter 11 Trustee immediately.

**B. There Are Two Alternative Paths for Appointment of a Chapter 11 Trustee, Both of Which Are Satisfied**

21. The Bankruptcy Code provides two paths for the appointment of a Chapter 11 Trustee. The first, codified in § 1104(a)(1), is "for cause," and is used for actions such as fraud, dishonesty, incompetence or mismanagement. The second standard, codified in § 1104(a)(2), is a more general catchall to appoint a trustee when it is in the interest of creditors. Stepanian submits that both standards are satisfied.

22. Section 1104(a) provides in pertinent part:

    a. At any time after the commencement of the case but before confirmation of a plan, on request of a party in interest or the United States trustee, and after notice and a hearing, the court shall order the appointment of a trustee—

        (1) for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause, but not including the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor; or

        (2) if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate, without regard to the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor.

11 U.S.C. § 1104(a).

<u>Stepanian Is a "Party in Interest"</u>

23. Only a "party in interest" may bring a motion seeking to appoint a trustee. A "party in interest" is not defined in the Bankruptcy Code. However, it is generally intended to encompass any party with an interest in the matter before the court. *See Term Loan Holder Comm. v. Ozer Grp., L.L.C. (In re Caldor Corp.)*, 303 F.3d 161, 172 (2d Cir. 2002).

24. There is little doubt that Stepanian is a "party in interest"— Stepanian has the largest claim in the case (as listed on the Debtor's schedules). Thus, Stepanian satisfies the party-in-interest test.

<u>"Cause" Exists for the Immediate Appointment of a Chapter 11 Trustee</u>

25. The "for cause" standard includes the specific factors enumerated in § 1104(a)(1): fraud, dishonesty, incompetence or gross mismanagement, all of which are present in this case (and only one of which is required for appointment of a Chapter 11 Trustee).

26. Courts have wide discretion to evaluate 'cause' on a case-by-case basis. *See In re Marvel*, 140 F.3d at 473; *In re Clinton Centrifuge, Inc.*, 85 B.R. 980, 984 (Bankr. E.D. Pa. 1998). "[T]he concepts of incompetence, dishonesty, gross mismanagement and even fraud all cover a wide spectrum of conduct." *In re Gen. Oil Distribs., Inc.*, 42 B.R. 402, 409 (Bankr. E.D.N.Y. 1984); *see also Schuster v. Dragone*, 266 B.R. 268, 272 (D. Conn. 2001). Moreover, "[a] court may consider <u>both</u> the pre and post-petition misconduct of the current management when making the determination that 'cause' exists for the appointment of a trustee." *See In re The 1031 Tax Grp., LLC*, 374 B.R. 78, 86 (Bankr. S.D.N.Y 2007). It is important to note that in this case there is conduct that satisfies the standard <u>both</u> pre- and post-petition.

27. The grounds constituting cause for the appointment of a trustee are broad. *See* 7 Collier on Bankruptcy ¶¶ 1104.02[3][c], 1104.12 (15th ed. rev. 2003) (noting "fraud, dishonesty, incompetence and gross mismanagement . . . are not the exclusive bases for finding cause for the appointment of a trustee"). The language of § 1104(a) "does not promulgate an exclusive list of causes for which a trustee must be appointed[.]" *In re Marvel*, 140 F.3d at 472. The "'concepts of incompetence, dishonesty, gross mismanagement and even fraud all cover a wide range of conduct,' and courts must be given the discretion necessary to determine if the debtor-in-possession's 'conduct shown rises to a level sufficient to warrant the appointment of a trustee.'" *Id.* (citing *Comm. of Dalkon Shield Claimants v. A.H. Robins Co.*, 828 F.2d 239, 242 (4th Cir. 1987)).

28. For cause is broader than the specific enumerated factors in § 1104(a)(1) and "is within the discretion of the court and due consideration must be given to the various interests involved in the bankruptcy proceeding." *In re Bellevue Place Assocs.*, 171 B.R. 615, 623 (Bankr. N.D. Ill. 1994). Stated another way, for cause covers a myriad of actions a debtor may improperly take, and can be found simply where appointment is in the interests of creditors. *See In re Okla. Ref. Co.*, 838 F.2d 1133, 1136 (10th Cir. 1988). "[S]ection 1104 represents a protection that the Court should not lightly disregard or encumber with overly protective attitudes towards debtors-in-possession." *See In re Bellevue Place*, 171 B.R. at 623 (citing *In re V. Savino Oil & Heating Co.*, 99 B.R. 518, 525 (Bankr. E.D.N.Y. 1989)).

29. Once a court finds that cause exists, appointment of a trustee is mandatory; the court "has no discretion but must appoint a trustee." *In re Oklahoma Refining*, 838 F.2d at 1136 (citing *In re Ford*, 36 B.R. 501, 504 (Bankr. W.D. Ky. 1983)). Section 1104(a) "mandates

136096504.2

appointment of a trustee when the bankruptcy court finds cause. *In re Sharon Steel Corp.*, 871 F.2d 1217, 1226 (3d Cir. 1989).

30. Stepanian submits that the conduct outlined here committed by the Debtor clearly meets all four elements of the "for cause" test (only one of which is actually required).

31. Courts addressing circumstances similar to those present here have determined that cause exists. *See*, *e.g.*, *In re Hoyle*, No. 10-01484-TLM , 2013 WL 210254, at *15 (Bankr. D. Idaho Jan. 17, 2013); *In re AG Serv. Centers, L.C.*, 239 B.R. 545 (Bankr. W.D. Mo. 1999). In *Hoyle* the Court granted a motion to convert case after finding that cause existed for several reasons, including under Section 1112(b)(4)(B) for "gross mismanagement of the estate." One of those reasons was the debtor made several deposits of estate income into non-debtor in possession accounts. The court noted that the debtor's failures "imped[ed] transparency and clarity regarding the financial transactions of the estate." *In re Hoyle*, 2013 WL 210254, at *12.

32. Specifically, similar to the facts here, the *Hoyle* court stated as follows:

> Here, as in … other chapter 11 cases, the UST provided Debtor with Chapter 11 Guidelines which echo the Code's provisions and provide guidance regarding how a debtor in possession should conduct his affairs and protect the bankruptcy estate. The Guidelines instruct a debtor to 'close its pre-petition bank accounts and establish new "debtor in possession" bank accounts,' and to ensure all funds of the estate are deposited in such accounts. The Guidelines also instruct a debtor to obtain court approval for, inter alia, paying pre-petition debt, hiring and paying professionals, and selling assets outside the ordinary course of business. Yet Debtor ignored several of the UST's warnings, and proceeded to take improper actions.

*In re Hoyle*, 2013 WL 210254, at *12.

33. In *AG Serv. Centers* a secured creditor filed an emergency motion for appointment of a trustee, because the debtor continued to use a non-debtor-in-possession bank account for the operations of its retail store. The court granted the motion after finding that cause existed for appointment of a trustee.

34. Stepanian submits that the appointment of a Chapter 11 Trustee is equally important and urgent in this case.

The Interest of Creditors Warrants Immediate Appointment of a Chapter 11 Trustee

35. Courts have recognized that the interests of the creditors test under Section 1104(a)(2) is a flexible standard which gives courts wide discretion to appoint a trustee even when no cause exists. *In re Ridgemour Meyer Props., LLC*, 413 B.R. 101, 113 (Bankr. S.D.N.Y. 2008). In determining whether a trustee should be appointed "in the interests of creditors," courts "look to the practical realities and necessities." *Id.* at 112 (citing *In re Ionosphere Clubs, Inc.*, 113 B.R. 164, 168 (Bankr. S.D.N.Y. 1990)).

36. The Court need not find cause in order to appoint a trustee. Pursuant to Section 1104(a)(2), the Court has wider discretion and the standards are even more flexible than those under § 1104(a)(1). *See In re Oklahoma Refining*, 838 F.2d at 1136 ("[i]t is clear, both from the language of the statute and established case law, that the court need not find any of the enumerated wrongs in order to find cause for appointing a trustee … It is sufficient that the appointment be in the interest of creditors.") (internal citation omitted). *See In re Bellevue Place*, 171 B.R. at 623; *In re Colo.-Ute Elec. Ass'n*, 120 B.R. 164, 176 (Bankr. D. Colo. 1990) ("As to whether the appointment of a trustee is in the best interest of creditors pursuant to Section 1104(a)(2), the court should eschew rigid absolutes and look to the practical realities and necessities.") (internal quotations omitted) (citation omitted). Indeed, it is enough that

appointment of a Chapter 11 Trustee is in the "interest of the estate generally, which can mean that there may be competing interests that weigh for and against the appointment." *In re Sanders*, No. 99 B 9876, 2000 WL 329574, at *5 (Bankr. N.D. Ill. Mar. 2, 2000).

37. "Section § [sic] 1104(a)(2) envisions a flexible standard and gives the … court discretion to appoint a trustee when doing so would serve the parties' and estate's interests." *In re 1031 Tax Group*, 374 B.R. at 90 (citing *In re Marvel Entm't*, 140 F.3d 463, 474 (3d. Cir. 1998) (internal quotations omitted)). Even if the Court does not find that cause exists to appoint a Chapter 11 Trustee under § 1104(a)(1), the Court may still appoint a trustee "if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate." 11 U.S.C. § 1104(a)(2).

38. Courts typically consider the following factors to determine whether the appointment of a trustee is warranted under the "interests of creditors" standard set forth in § 1104(a)(2) of the Bankruptcy Code: (a) the trustworthiness of the debtor; (b) the debtor's past and present performance and prospects for rehabilitation; (c) the confidence, or lack thereof, of creditors in present management; (d) doubt as to whether the debtor's current management could be considered loyal to the debtor's rehabilitation; (e) depletion of the estate assets and impairment of secured creditors' interests; (f) questionable post-petition expenditures; and (g) inherent conflicts on the part of debtors-in-possession in carrying out their fiduciary responsibilities. *See In re Ionosphere Clubs*.

In the instant case, each *Ionosphere* factor supports appointment of a Chapter 11 Trustee:

Trustworthiness of the Debtor: The fact that the Pandolfos transferred over $200,000 to Mrs. Pandolfo's personal account is a good indication of a problem.

Past and Present Performance and Depletion of Estate Assets: The Pandolfos testified at the Section 341 meeting that the Debtor is losing money, has not paid or reserverd for taxes and does not have workers compensation insurance.

Creditors' Confidence: Based on the actions since the Petition Date, Stepanian, the largest creditor, has no confidence that the Debtor can satisfy the basic requirements, let alone ever successfully emerge from Chapter 11.

Loyalty of Management and Questionable Post-Petition Expenditures: Since the Debtor does not have post-petition bank accounts and the Debtor is using a personal account, creditors cannot determine the extent of the improprieties.

Inherent Conflicts: Use of personal bank accounts and substantial transfers to the Debtor's principal indicate the Debtor is conflicted and favors the interests of its principals over the legitimate interests of creditors.

It is clear that to the extent there even is any benefit at all of permitting the Debtor to remain in possession, the potential harm far outweighs any potential benefit and this analysis that tilts decidedly in favor of appointing a Chapter 11 Trustee.

Stepanian submits that the appointment of a Chapter 11 Trustee is clearly in the interests of the creditors.

## CONCLUSION

WHEREFORE, Stepanian respectfully requests that the Court enter an Order directing the appointment of a Chapter 11 Trustee and grant such other, further and different relief as the Court may deem just and proper.

Dated: New York, New York  
       June 30, 2017

PERKINS COIE LLP  
Attorneys for Berdj Stepanian

By: */s/ Schuyler G. Carroll*  
    Schuyler G. Carroll  
    SCarroll@perkinscoie.com  
    30 Rockefeller Plaza, 22nd Floor  
    New York, NY 10112-0085  
    Telephone: (212) 262-6900  
    Facsimile: (212) 977-1649